**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

COAL RIVER MOUNTAIN WATCH,
APPALACHIAN VOICES,
WEST VIRGINIA HIGHLANDS CONSERVANCY, and
SIERRA CLUB,

                    Plaintiffs,

v.                                  CIVIL ACTION NO. 3:25-0103

COLONEL PHILLIP J. VALENTI,
in his official capacity as District Engineer,
U.S. Army Corps of Engineers, Huntington District,
WILLIAM H. GRAHAM,
in his official capacity as Commander and
Chief of Engineers, U.S. Army Corps of Engineers, and
UNITED STATES ARMY CORPS OF ENGINEERS,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiffs challenge a permit the U.S. Army Corps of Engineers issued for a surface mine. When deciding whether to vacate a federal agency action, courts usually only consider evidence included in the "administrative record." Plaintiffs, however, filed a Motion asking the Court to consider certain evidence outside the administrative record when ruling on their Motion for Summary Judgment. For the reasons stated below, the Court **GRANTS** the Motion **in part** and **DENIES** the Motion **in part**.

## I.    BACKGROUND

In 2023, the U.S. Army Corps of Engineers issued a permit under § 404 of the Clean Water Act (CWA) to Republic Energy, LLC for the Turkeyfoot Surface Mine in Raleigh County, West

Virginia. *See* A.R. 4996.[1] The permit allows Republic to create "valley fills" by filling streams with rock removed during mining. *See id.* at 4972–75.

In comments submitted to the Corps, Plaintiffs raised concerns that the valley fills would harm water quality by increasing "specific conductivity" downstream of the Mine. *See id.* at 2142. High specific conductivity can indicate the presence of high ion content in water. *See* EPA, *Ionic Strength*, https://perma.cc/X3N4-HK7G (last updated Mar. 10, 2025). Water with elevated ionic strength can harm aquatic organisms. *See id.* As part of the permitting process, the Corps predicted that the valley fills would not increase conductivity downstream. *See* A.R. 4791. Plaintiffs now assert that Republic has already constructed a valley fill, and that the valley fill is increasing the conductivity of downstream waters. ECF 28, Pls.' Mot. 2.

Plaintiffs' lawsuit asks the Court to vacate the Corps permit pursuant to the Administrative Procedure Act (APA). *See* ECF 1 ¶ 4. The APA directs courts to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Sierra Club v. U.S. Army Cops of Eng'rs*, 981 F.3d 251, 256 (4th Cir. 2020) (quoting 5 U.S.C. § 706(2)(A)).

Plaintiffs argue issuing the permit was arbitrary and capricious for six reasons: (1) the Corps ignored its own past erroneous decisions, *see* ECF 30, at 8, (2) the Corps failed to grapple with studies showing valley fills harm water quality, *see id.* at 12, (3) data collected after the Corps approved the permit shows the agency's prediction about water-quality impacts was wrong, *see id.* at 15, (4) the Corps improperly relied on a CWA § 401 certification Republic received from the West Virginia Department of Environmental Protection, *see id.*, (5) the Corps set an improper

---

[1] Throughout this Memorandum Opinion and Order, the Court will use "A.R." to refer to specific parts of the administrative record.

performance standard for the project, *see id.* at 18, and (6) the Corps relied on the mistaken belief that Republic's § 401 certification included limits for total dissolved solids (TDSs), *see id.* at 20.

## II.   LEGAL STANDARD

"It is 'black-letter administrative law that in an Administrative Procedure Act case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision.'" *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) (quoting *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013)). "Exceptions to that rule are quite narrow and rarely invoked." *Id.* at 64. "'Supplementation of the administrative record is not allowed unless the moving party demonstrates unusual circumstances justifying a departure from the general presumption,' that review of the whole record under the APA 'is limited to the record compiled by the agency.'" *Ctr. for Biological Diversity v. Tex. Dep't of Transp.*, No. 1:16-CV-876, 2019 WL 12313647, at *26 (W.D. Tex. Sept. 30, 2019) (quoting *Medina Cnty. Envt'l Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010)).

Courts have offered several explanations for generally refusing to consider extra-record evidence in APA cases. The Supreme Court has explained that referring solely to the administrative record "avoid[s] 'propelling the court into the domain which Congress has set aside exclusively for the administrative agency.'" *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169 (1962) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *see also Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) ("Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making."); *American Canoe Ass'n, Inc. v. EPA*, 49 F.

-3-

Supp. 473, 476 (E.D. Va. 1999) (similar); *Ctr. for Biological Diversity v. Norton*, No. CIV 03-252, 2005 WL 8163808, at *7 (D.N.M. Mar. 3, 2005) (similar).

The D.C. Circuit, meanwhile, has reasoned that "[t]o review more than the information before the Secretary at the time she made her decision risks . . . requiring administrators to be prescient or allowing them to take advantage of post hoc rationalizations." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.3d 788, 792 (D.C. Cir. 1984); *see also Norton*, 2005 WL 8163808, at *7 (similar).

Federal courts disagree on the number and nature of exceptions to the prohibition on extra-record evidence. *Compare, e.g.*, *Chestnut v. Jabbou*, Civ. A. No. 3:21-0497, 2022 WL 4096607, at *3 (D.S.C. Sept. 7, 2022) ("Federal courts may supplement an agency's administrative record only if it 'does not reveal the agency's reasoning or if it appears that the agency acted in bad faith.'" (quoting *Save Our Sound OBX, Inc. v. N.C. Dept. of Transp.*, 914 F.3d 213, 226–27 (4th Cir. 2019))) *with La Union Del Pueblo Entero v. FEMA*, Civ. A. No. B:08-487, 2011 WL 1230099, at *9 (S.D. Tex. Mar. 30, 2011) (recognizing eight exceptions to the prohibition). This Court has recognized four exceptions:

> (i) it appears the agency relied on documents or materials not in the record, (ii) the agency deliberately or negligently excluded documents that may have been adverse to its decision; (iii) background information is needed to determine whether the agency considered all the relevant factors, or to permit explanation or clarification of technical terms or subject matter; or (iv) the agency so failed to explain administrative action that it frustrates judicial review.

*Ohio Valley Env't Coal. v. McCarthy*, CIV. A. NO. 3:15-0271, 2016 WL 2733137, at *2 (S.D. W. Va. May 10, 2016).

Plaintiffs argue the Court should recognize another exception for evidence "indicating the truth or falsity of agency predictions . . . ." Pls.' Mot. 4 (quoting *Am. Petroleum Inst. v. EPA*, 540 F.2d 1023, 1034 (10th Cir. 1976)). They also argue the Court may take judicial notice of publicly

available extra-record evidence even if that evidence does not fall under an exception. *See id.* The Court addresses each argument in turn.

### A.  Evidence Indicating the Truth or Falsity of Agency Predictions

Plaintiffs ask the Court to admit evidence showing the Corps's predictions turned out to be wrong. *See* Pls.' Mot. 8–10. Only a few courts have recognized an exception for this sort of evidence. *See Am. Petroleum Inst.*, 540 F.2d at 1034; *Amoco Oil Co. v. EPA*, 501 F.2d 722, 729 n.10 (D.C. Cir. 1974); *La Union Del Pueblo Entero*, 2011 WL 1230099, at *9.[2]

The Court declines to recognize an exception for evidence indicating the truth or falsity of agency predictions. Such an exception is inconsistent with the principles underlying the admission of extra-record evidence. Evidence admitted under this exception could tempt a court to substitute its own judgment for that of the agency by giving the court the benefit of hindsight. *See Lands Council*, 395 F.3d at 1030. Recognizing the exception would also "requir[e] administrators to be prescient [and] allow[] them to take advantage of post hoc rationalizations." *Walter O. Boswell Mem'l Hosp.*, 749 F.3d at 792.

Accordingly, the Court will not admit extra-record evidence on the grounds that it indicates the truth or falsity of agency predictions.

### B.  Judicial Notice

Plaintiffs' Motion asserts that a court may take judicial notice of information publicly available on government websites even if that evidence does not fall under one of the exceptions for extra-record evidence. *See* Pls.' Mot. 4. Defendants argue evidence must fall under an exception to be judicially noticed. *See* ECF 35, at 12; ECF 36, at 13.

---

[2] Two of those cases—*American Petroleum Institute* and *Amoco*—only went so far as to recognize the exception in the agency-rulemaking context. *See* 540 F.2d at 1034; 501 F.2d 722, 729 n.10.

At least two district courts have agreed with Defendants. *See Yellowstone to Uintas Connection v. Boiling*, No. 4:20-cv-00192, 2021 WL 5702158, at \*12 (D. Idaho Mar. 4, 2021) ("[W]here . . . a plaintiff seeks to have the court consider extra-record evidence through judicial notice, that evidence still must meet one of the exceptions identified in *Lands Council*, 395 F.3d at 1030 to be added to the record." (quoting *Friends of the Clearwater v. Higgins*, 523 F. Supp. 3d 1213, 1222 (D. Idaho 2021)); *All. for Wild Rockies v. Probert*, 412 F. Supp. 3d 1188, 1198 (D. Mont. 2019) ("[A] party cannot circumvent the rules governing record supplementation by asking for judicial notice rather than supplementation." (quoting *All. for Wild Rockies v. Marten*, CV 16-35-M, 2016 WL 7174671, at \*3 (D. Mont. Oct. 3, 2016))).

Plaintiffs have made no attempt to explain *why* judicial notice is proper when an exception does not apply.[3] Also, the risks of admitting extra-record evidence exist whether that evidence is publicly available or not. Accordingly, the Court will not consider extra-record evidence simply because it is publicly available.

## III. ANALYSIS

Plaintiffs' Motion asks the Court to admit four pieces of evidence: (1) a report from Dr. Matthew E. Baker, Pls.' Mot. 2, (2) data showing increased conductivity downstream of the Turkeyfoot Mine, *id.*, (3) a memorandum granting a variance for the mine's state permit, *see* Pls.' Mot., Ex. 3, and (4) a chart listing waterways strained by ionic toxicity, *see* Pls.' Mot., Ex. 4. The Court discusses each piece of evidence in turn.

*     *     *

---

[3] Notably, Plaintiffs' Reply does not address Defendants' arguments regarding judicial notice. *See* ECF 40.

### A. Dr. Baker's Report

Dr. Baker's report summarizes scientific literature on mining and conductivity and concludes, based on samples taken downstream of the Turkeyfoot Mine, that the Mine is already causing increased conductivity. *See* Pls.'s Mot., Ex. 1, at 2–14, 31.

Plaintiffs argue the report should be admitted because it (1) explains technical subject matter, (2) shows the Corps did not consider all relevant factors in approving the permit, and (3) demonstrates the falsity of the Corps's predictions. *See* Pls.' Mot. 7–8.

According to Plaintiffs, Dr. Baker's report will help explain or clarify "the scientific consensus regarding surface coal mining, ionic pollution, and aquatic life impairment . . . ." *Id.* at 7. The Court agrees. In response to public comments on Republic's permit application, the Corps stated:

> [W]ith the advent of new studies on the effects of surface mining on water quality, including those studies highlighted by [Plaintiffs] in their comment letter, the Corps along with the other regulatory agencies, in coordination with the mining companies, have worked together to devise best management practices, adaptive management plans, mining construction methods, improved water quality effluent limitations, and the development of smaller surface mines with fewer valley fills, to help reduce the potential for elevated conductivities.

A.R. 4870. The Corps, however, never clarified what those "new studies" are. Dr. Baker's report summarizes several studies published in 2020 or later, *see* Pls.' Mot., Ex. 1, at 9–11, and will thereby help the Court determine what studies the Corps may have relied on and whether those studies support the Corps's decision to issue the permit. Accordingly, the Court will admit the report for the purposes of illuminating what "new studies" the Corps may have relied on and explaining what those studies say.

As noted above, this Court has recognized an exception to the prohibition on extra-record evidence for "background information . . . needed to determine whether the agency considered all

the relevant factors." *McCarthy*, 2016 WL 2733137, at *2. Of Plaintiffs' arguments for summary judgment, only two focus on the Corps's alleged failure to consider a relevant factor: (1) the Corps ignored its own past erroneous decisions and (2) the Corps failed to grapple with studies showing valley fills increase conductivity. Neither, however, provides a basis for admitting the report.

While the report concludes that surface mining increases conductivity, it does not address situations where the Corps's predictions about conductivity turned out to be wrong. *See* Pls.' Mot., Ex. 1. Also, Plaintiffs already raised concerns about the Corps's past mistakes in their public comments. *See* A.R. 2162–85. Similarly, Plaintiffs thoroughly discussed the scientific literature on the relationship between mining and conductivity in their public comments. [4] *See id.* at 2113–36. Since the administrative record already discusses the Corps's past errors, as well as studies on the relationship between mining and conductivity, there is no need for extra-record evidence to demonstrate the Corps failed to consider a relevant factor. The Court will not admit the report on this basis.

Finally, because the Court declines to recognize an exception for evidence indicating the truth or falsity of agency predictions, the Court will not admit the report on that basis.

### B. Turkeyfoot Data

Plaintiffs argue data collected downstream of the Mine should be admitted because (1) they demonstrate the falsity of the Corps's predictions and (2) the Court can take judicial notice of them. Since the Court declines to recognize an exception for evidence indicating the truth or falsity of agency predictions, the Court will not admit the data on that basis. Also, the Court will not take

---

[4] Dr. Baker's report summarizes studies that were not discussed in Plaintiffs' comments. *Compare* A.R. 2115–34 *with* Pls.' Mot, Ex. 1, at 2–13. Plaintiffs' Motion for Summary Judgment, however, asserts that the Corps failed to grapple with the scientific literature discussed in Plaintiffs' comments, in particular. *See* ECF 30, at 12–14. It does not argue the Corps also erred by failing to consider the studies which were summarized in Dr. Baker's report but not discussed in Plaintiffs' comments.

judicial notice of evidence that does not fall under an exception to the prohibition on extra-record evidence.

### C. WVDEP Authorization

Plaintiffs argue the authorization from the WVDEP should be admitted because (1) it demonstrates the falsity of the Corps's predictions and (2) the Court can take judicial notice of it. The Court will not admit the authorization for the same reasons it will not admit the Turkeyfoot data.

### D. Ionic-Toxicity Chart

Plaintiffs argue the chart showing waterways strained by conductivity should be admitted because (1) it explains technical subject matter, (2) it demonstrates the falsity of the Corps's predictions, and (3) the Court can take judicial notice of it. Again, the Court will not admit evidence based on the latter two arguments.

Nor will the Court admit the chart because it explains technical subject matter. While the information included in the Appendix could be considered "technical," the Appendix does not *explain* that information.

## IV. CONCLUSION

The Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion for the Admission of Necessary Extra-Record Evidence (ECF 28). The Court will consider Dr. Baker's report for the limited purpose of illuminating what studies the Corps may have relied on in issuing the § 404 permit and explaining what those studies say.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        April 21, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE